IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.
  No.6:05CR60016-001

RANULFO VASQUEZ-MARTINEZ                                                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The defendant, Ranulfo Vasquez-Martinez (hereinafter "Defendant"), is charged in an indictment filed herein on September 29, 2005, with being an illegal alien in possession of a firearm in violation of *18 U.S.C. §§ 922(g)(5) & 924(a)(2)*. (Doc. #1)

Pending before the Court is the defendant's motion to suppress filed on January 6, 2005. (Doc. #35) The United States filed a response to the motion on January 17, 2005. (Doc. #39) Hearing on the motion was conducted on January 30, 2006. The United States appeared by Assistant United States Attorney, Christopher D. Plumlee. The Defendant appeared in person and by his attorney, Assistant Federal Defender Lisa Peters. Following the hearing, the undersigned took the motion under advisement pending the receipt of letter briefs. These have now been received.

The pending motion concerns three statements allegedly made by the defendant. The first was allegedly given at the time that he was taken into custody on August 20, 2005. The second statement was allegedly given to a federal immigration officer during the officer's telephone conversation with the defendant on September 20, 2005, while the defendant was being held in the Montgomery County Jail. The third statement was allegedly given by the defendant on September 22, 2005, during custodial interrogation by a federal immigration officer.

As will be elaborated upon below, the United States stipulated in open court that it will not

offer the first statement in its case-in-chief. The United States contends that the second and third statements were Constitutionally elicited and are admissible.

**Evidence presented:**

The following evidence was presented during the suppression hearing.

**Jarrett Scott:** Jarrett Scott is a deputy with the Montgomery County, Arkansas Sheriff's Department. He testified that on the late afternoon of August 20, 2005, he was on duty and stopped at a convenience store in Mt. Ida, Arkansas. The store clerk reported to him that a woman had just been in the store and had shown the clerk a counterfeit $50.00 bill and asked if it was "fake." The clerk identified the woman as the driver of a vehicle still located in the store parking lot.

Scott stopped the vehicle and spoke to the driver, Lisa Hernandez. The defendant was seated in the front passenger seat. Ms. Hernandez spoke fluent English. Deputy Scott asked Ms. Hernandez if she had the $50.00 bill. The bill was in the defendant's wallet. Ms. Hernandez gave the bill to Deputy Scott and stated that she had received the bill when she cashed a check at a bank. Scott examined the bill and testified that it did not look real.

Scott asked Ms. Hernandez for a driver's license, proof of insurance and vehicle registration. She produced an identification card. The defendant had no identification. Scott asked Ms. Hernandez what the defendant's name was and she responded: Victor Martinez. She stated that the passenger "had some sort of work visa or something, but he didn't have it in his possession." Scott checked both names with the AC/NCIC. No Arkansas driver's license was found with respect to Victor Martinez and the search revealed that the driver had a suspended driver's license.

Arkansas State Police Trooper Neal Thomas arrived to back up Scott. Trooper Thomas asked for the defendant's wallet. Scott searched the vehicle and found a pistol under the front passenger

AO72A
(Rev. 8/82)

seat where the defendant had been sitting. The magazine and holster were found under the driver's seat. Ms. Hernandez and the defendant were outside of the vehicle during the search. The dispatcher reported that the pistol was reported stolen. Trooper Thomas took possession of the pistol.

Ms. Hernandez and the defendant were arrested and handcuffed. Scott verbally *Mirandized* Ms. Hernandez at his vehicle. Trooper Thomas took the defendant to Thomas' vehicle. Scott never *Mirandized*, nor questioned the defendant. A third officer transported the defendant to the Sheriff's Office.

Scott testified that, other than the language barrier, there was nothing threatening about the defendant and Ms. Hernandez, the driver.

**Trooper Neal Thomas:**

Arkansas State Police Highway Patrol Officer Neal Thomas testified that he has 17 years experience in law enforcement with 10 years in the Arkansas State Police. On August 20, 2005, at approx. 7:08 p.m. he was asked to assist Deputy Scott at the southwest side of a convenience store at the intersection of highway 270 East and Highway 27 South.

He saw a vehicle at the gas pumps with both occupants out of the vehicle. Scott showed Thomas the $50.00 bill. The bill was obviously not real and Thomas secured the bill.

The defendant was standing at the back of the vehicle and Scott was attempting to get his identification. Although the female driver had an identification card, no identification of the defendant had been made.

Ms. Hernandez and the defendant were speaking Spanish to each other. Thomas did not understand what was being said.

Deputy Scott asked Ms. Hernandez if the vehicle belonged to them, and he asked if more

counterfeit money, controlled substances or firearms were in the vehicle. Ms. Hernandez responded "no," and turned to the defendant and said something to him. She then stated that there was a pistol under the front passenger seat. From the defendant and Ms. Hernandez it was learned that the pistol came from "a guy at a pawn shop in Hot Springs." Both Ms. Hernandez and the defendant were taken into custody for possession of counterfeit money and possession of a firearm.

The defendant was placed in the Arkansas State Police vehicle and Thomas read the *Miranda* rights to the defendant in English. Thomas also activated a video camera in the vehicle. The defendant responded "yes" he understood his rights, however, he signed nothing. Thomas could not talk to the defendant well, and the defendant had trouble communicating with Trooper Thomas. Thomas felt that the defendant understood the rights. Thomas advised the defendant that he was under arrest.

Thomas is not aware of any incriminating statements made by the defendant to Thomas.

Thomas charged the defendant with possession of a stolen firearm and turned the matter over to the Arkansas State Police Criminal Investigation Division and The Drug Task Force.

**United States Ex. #1** is a videocassette which contains audio of the conversation in the Trooper's automobile.

**Mike May:** Mike May is an agent for the Drug Task Force and works for the Prosecutor. He was off duty on the day in question, and he was headed for the convenience store to purchase cigarettes. Deputy Scott asked May to participate. May understood that there was a counterfeit $50.00 bill and a stolen weapon. The two subjects, defendant, Sergio Victor Martinez and Lisa Hernandez, his wife, were under arrest.

May interviewed Ms. Hernandez at the Montgomery County Courthouse. He read the

AO72A
(Rev. 8/82)

*Miranda* rights to her from a written form. She agreed to speak.

The defendant did not speak English and May does not speak Spanish. May could not communicate with the defendant. No interpreter was available. He tried to obtain the defendant's name and other information. The only thing that May understood from the defendant was that the pistol belonged to Ms. Hernandez. No further questions were asked of the defendant by May. May could find no proof that the defendant was a legal resident. Ms. Hernandez said that the defendant was not a legal resident.

**Vince Carmack:** Vince Carmack has been an agent of the United States Bureau of Immigration and Customs Enforcement for 8 years. He is stationed in Ft. Smith, Arkansas. His duties include criminal investigation with respect to aliens. He is "fairly fluent" in Spanish. In August, 2005 Carmack was contacted by Montgomery County with respect to the arrest of the defendant. Carmack then contacted the United States Attorney.

On September 20, 2005, Carmack telephoned the Montgomery County Sheriff's Office and interviewed the defendant over the telephone. Before the telephone call, Carmack had been given information as to when and why the defendant had been arrested. The purpose of the call was to ascertain the defendant's identity, his legality and whether he was amenable to deportation. Carmack spoke to the defendant in Spanish. He identified himself and informed the defendant of the purpose of the call. Carmack did not give *Miranda* warnings. He asked the defendant his name, where he was born and how he came into the United States. The defendant at first responded that his first name is Sergio. The defendant then gave his real name. The defendant stated that his real name is Ranulfo Vasquez-Martinez. The defendant gave his date of birth and where he was born. Carmack did not discuss with the defendant the circumstances of the defendant's arrest. The defendant may

-5-

have asked what was going to happen to him.

Carmack testified that he was not required to *Mirandize* the defendant before questioning him about his alienage, by virtue of the provisions of Section 287 of the Immigration Nationality Act.[1]

Carmack took custody of the defendant on September 22, 2005, and transported him from Mt. Ida to the ICE office in Ft. Smith. The defendant was interviewed in an office. Carmack ran the defendant's name through the computer system and it was reported that the defendant had previously been arrested by ICE and was voluntarily returned to Mexico.

Carmack read the *Miranda* warnings to the defendant using a standard ICE form, written in Spanish. The ICE *Miranda* form (U.S. Ex. #2) states that the defendant was arrested at 10:30 a.m. on September 22, 2005, and states that the form was signed at 1:20 p.m. on September 22, 2005. Carmack let the defendant read the form, then the defendant signed the waiver of rights and Donald Thompson, an ICE supervisor, signed the form as a witness. Carmack has read the ICE form and its contents are consistent with *Miranda*. The defendant asked no questions, did not appear to be under the influence of any substances, and appeared to understand his rights and what was being said.

**United States Exhibit #2** is the *Miranda* form and waiver identified by Carmack.

Carmack then asked more specific questions with respect to the defendant's possession of a firearm and his arrest. With the defendant, Carmack went over the identification information that the defendant had been provided two days earlier. Carmack ran the defendant through the computerized finger print identification system, and learned that the defendant had previously been arrested by ICE and returned to Mexico.

Carmack wrote out the defendant's statement in English and correctly translated the

---

[1] Section 287 is *8 U.S.C. § 1357(a)(1)*.

-6-

handwritten statement for the defendant. Carmack knew that the defendant could not read English and couldn't speak English well. He asked the defendant if he wanted to add anything, and the defendant did not. Carmack asked the defendant to sign the handwritten statement and the defendant did so. The defendant printed his name at the bottom of the page then signed his name next to it. Agent Thompson and ICE Agent Mike Spurlock signed as witnesses.

The interview was not recorded or videotaped.

**United States Exhibit #3** is the statement handwritten by Carmack and signed by the defendant and witness.

**Donald Thompson:** Donald Thompson is the ICE supervisor in Ft. Smith, Arkansas. Carmack asked Thompson to witness Carmack advising the defendant of his rights. Carmack used an ICE rights form written in Spanish. The defendant looked over the form and said that he understood it. The defendant then signed the form.

Thompson is not fluent in Spanish. He has received one month of training in Spanish, in order to be able to determine alienage. Thompson identified his signature at the bottom of the statement of rights form. Thompson was present when Carmack went over the form in Spanish. Carmack asked the defendant if he had any questions and the defendant said "comprende," which means "understand." The were no questions or concerns voiced by the defendant.

Thompson can not say with 100% certainty that the rights form was read to the defendant correctly, but Carmack appeared to read the form.

**Mike Spurlock:** Mike Spurlock is an ICE agent in Texarkana, Arkansas. His duties are to arrest, transport, deport and investigate illegal aliens. On September 22, 2005, Spurlock was at the Ft. Smith ICE office. Agent Thompson was assisting Agent Carmack. Thompson received a

AO72A
(Rev. 8/82)

telephone call and asked Spurlock to witness and assist. Spurlock witnessed Carmack questioning the defendant in Spanish.

Spurlock has a "limited working knowledge" of Spanish. He received two weeks of Spanish training at the academy. He understood enough Spanish to understand the conversation. Spurlock knew that Carmack was asking questions about this case. The defendant was very cooperative and answered the questions. The defendant asked no questions.

Carmack hand wrote a statement as to the defendant's answers. The handwritten statement accurately reflected what the defendant said. Spurlock does not know if Carmack accurately translated the statement to the defendant, but believes that the translation was accurate based upon his two weeks of Spanish instruction and his years of work on duty.

The defendant agreed to swear to the statement. Spurlock identified United States' Exhibit #3 as the handwritten statement in question. He identified the defendant's signature. Spurlock identified the signature and signed at the bottom right of the statement.

**Discussion:**

Although the defendant's motion to suppress is somewhat vague on the point, counsel for the defendant clarified at the hearing that defendant seeks the suppression of all three statements allegedly made by the defendant: the initial statement made to Deputy Scott, at the time of the defendant's arrest, that the pistol found under the front passenger seat of the vehicle came from a Hot Springs pawn shop; the telephone statement made by the defendant to Agent Carmack on September 20, 2005, as to the defendant's entry into the United States and the illegality of his presence in the U.S.; and, the verbal and handwritten statements provided by the defendant to Agent Carmack on September 22, 2005, at the Ft. Smith ICE office.

AO72A
(Rev. 8/82)

<u>Statements at arrest:</u>   No issue is presented as to the first statement, in that the United States has stipulated in its response to motion to suppress (Doc. #39), and at the hearing, that it will "not use that particular statement in its case in chief, should the matter proceed to trial." (Doc. #39)  This stipulation was accepted by the defendant.

<u>Telephone statement:</u>  The second and third statements in question were both made by the defendant while in custody.  "[T]he Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). *Miranda* provides that the accused must be advised prior to custodial interrogation "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has a right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. at 478-79.  A waiver of the privilege is valid only if it is made voluntarily, knowingly, and intelligently. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).   "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.' " *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).  "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." *Moran v. Burbine,*

475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

With respect to the telephone statement of September 20, 2005, it is undisputed that the defendant was in custody and Agent Carmack testified that he did not advise the defendant of his *Miranda* rights before questioning him. Further, since the defendant spoke only Spanish and the ICE was contacted because the Montgomery County Prosecutor suspected that the defendant was an illegal alien, Agent Carmack's questions as to the legality of the defenant's presence in the United States were certainly "reasonably likely to elicit an incriminating response." *Pennsylvania v. Muniz,* 496 U.S. 582, 601 (1990)(interrogation for *Miranda* purposes refers to any questioning or conduct that the government officer should know is reasonably likely to elicit an incriminating response).

The United States has presented no authorities which would excuse the necessity of *Miranda* warnings in this situation, and we find that they were required. *United States v. Para,* 2 F.3d 1058, 1067-68 (10th Cir. 1993)(*Miranda* warnings required prior to questioning of an individual by INS agent, where the suspect is in custody, questioning goes to the suspect's true identity and questioning was "reasonably likely to elicit incriminating information relevant to establishing an essential element necessary for a conviction of being an illegal alien in possession of a firearm").

Although not cited by the United States, Agent Carmack testified that *Miranda* warnings were not required in this situation by virtue of the provisions of *8 U.S.C. § 1357(a)(1).* Under this 1952 statute, ICE agents are authorized to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." *Id.* We conclude, however, that while this statute presumably authorizes ICE agents to stop, detain and question suspects, it does not obviate the need for *Miranda* warnings where they are otherwise required. *See United States v. Flores-Sandoval,* 422 F.3d 711, 714 (8th Cir. 2005)(*8 U.S.C. § 1357(a)(1)* authorizes detention and

-10-

questioning of individuals where ICE officials believe such individuals to be aliens).

Further, Agent Carmack's questions cannot be viewed as "routine" booking questions for which no *Miranda* warnings are required as the defendant had been in custody for a month, and Agent Carmack acknowledged that he sought information as to the defendant's "alienage" and as to whether the defendant was subject to deportation. *United States v. Horton*, 873 F.2d 180, 181 n.2 (8th Cir. 1989)("*Miranda* does not apply to biographical data necessary to complete booking or pretrial services").

With the United States offering no other reason why *Miranda* warnings were not required, we are compelled to conclude that the telephone statement of the defendant of September 20, 2005, should be suppressed. *Oregon v. Elstad*, 470 U.S. 298, 307 (1985)(statements taken in violation of *Miranda* give rise to an irrebutable presumption that they have been compelled, they must be excluded from the prosecution's case).

<u>Statement at ICE office</u>: Agent Carmack testified that he is fluent in Spanish. Prior to questioning of the defendant at the ICE office, Carmack advised the defendant of his *Miranda* rights by reading the ICE form statement of rights to the defendant. (**U.S. Ex. #2**) The document is printed in Spanish. Carmack read the form to the defendant in Spanish and the defendant read the form himself. This was also witnessed by ICE Agent Donald Thompson. According to Agent Carmack and Thompson, after being advised of his *Miranda* rights and reading the form statement of rights, the defendant stated that he understood those rights and he signed the printed ICE "waiver of rights" portion of the form. (**U.S. Ex. #2**) Carmack read the waiver form to the defendant in Spanish and the defendant read the form himself, prior to signing. The defendant's execution of the waiver form was witnessed by Agents Carmack and Thompson.

AO72A
(Rev. 8/82)

According to Agent Carmack, after waving his *Miranda* rights, the defendant answered Carmack's questions concerning his status in the United States, his arrest and the firearm. This questioning was witnessed by ICE Agent Mike Spurlock.

Agent Carmack testified that he correctly translated the defendant's statement into English and recorded the same, in his handwriting, in **U.S. Ex. #3**. He testified that this exhibit correctly sets forth the defendant's statement.[2]

**U.S. Ex. #3** was identified by Agent Carmack as Carmack's handwritten, accurate translation of the defendant's statement.

It is found that the defendant's waiver was "...made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right ... [and] was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." *Moran,* 475 U.S. at 421. Accordingly, the waiver was voluntarily, knowingly and intelligently made, and the defendant's motion to suppress these statements must be denied.

Although we have found that a *Miranda* violation occurred with respect to the defendant's September 20, 2005, telephone statement, the defendant's custodial statement of September 22, 2005, remains admissible. *Oregon v. Elstad*, 470 U.S. at 306-07 ("fruit of the poisonous tree" doctrine is inapplicable in the *Miranda* context).

> Absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a

---

[2]The defendant does not argue that the form does not accurately set forth the *Miranda* rights or that the waiver portion is inadequate.

AO72A
(Rev. 8/82)

rational and intelligent choice whether to waive or invoke his rights.

*Oregon v. Elstad*, 470 U.S. at 314. Although Agent Carmack did not provide *Miranda* warnings before questioning the defendant via the telephone on September 20, 2005, there is no evidence that the statements made by the defendant during that conversation were coerced. Accordingly, the defendant's subsequent September 22, 2005 statements, made following his voluntary, knowing and intelligent waiver of *Miranda* rights, remain admissible.

Although the motion to suppress with respect to the defendant's statements made while in custody at the ICE office must be denied, it must be noted that no evidence was presented at hearing indicating that the defendant can read English. Although the government's witnesses testified that Agent Carmack's handwritten statement (U.S. Ex. #3), was accurately translated to the defendant before the defendant signed the document, it will remain for the trier of fact to determine the weight to be given to the signed, handwritten statement.

We conclude, therefore, that the defendant's motion to suppress with respect to his statements made while in custody at the ICE office in Ft. Smith and the handwritten statement signed by the defendant, must be denied.

**Conclusion:**

Accordingly, for the reasons set forth above, we recommend that the motion to suppress be granted as to the September 20, 2005, telephone statement and denied as to the September 22, 2005 statements.

**The parties have seven (7) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

DATED this 9th day of February 2006.

                                      */s/ Bobby E. Shepherd*
                                      HON. BOBBY E. SHEPHERD
                                      UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)